TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00166-CV






Ronald James Hewelt, Appellant



v.



Virginia Merritt Hewelt, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 98-11567, HONORABLE HUME COFER, JUDGE PRESIDING







 Ronald Hewelt appeals the property division portion of the divorce decree ending his
marriage of twenty-four years to Virginia Merritt Hewelt. Raising four issues, Ronald contends that
the district court erred in allocating stock options that were granted to Virginia during the marriage
and that this erroneous allocation materially affected the property division. We will reverse the
property division and remand that portion of the divorce decree to the district court for further
proceedings.


Background


 All of the property issues were tried to the court. Virginia was employed by Dell
Computer Corporation. During the marriage, Dell granted her options to purchase 123,594 shares
of Dell stock. Mr. Larry Bradford, a C.P.A. certified in business valuations, was the only expert to
testify about the options. Although he was first contacted by Ronald's attorney to (1) analyze the
options and (2) account for the proceeds from various sales of options by Virginia, both parties
utilized his expertise and analyses. Bradford determined that the majority of the options granted
during the marriage had not vested during the marriage. According to Dell's terms and conditions
associated with the options, vesting was contingent upon Virginia's continued employment with
Dell. (1) Bradford testified that the options should be characterized as partially community property
and partially Virginia's separate property because most of the options would not vest until after
marriage. In making his characterization determination, Bradford utilized a time ratio formula
adopted by California case law. See Hug v. Hug, 154 Cal. App. 3d 780 (1984). The district court
sustained an objection to a question asking Bradford if this method of characterizing options was
appropriate in Texas; the court ruled that the question was improper because it asked for a legal
conclusion. Ronald disagreed with Bradford's Hug characterization method and maintained that
because the options were granted during the marriage, based on the inception of title doctrine, all of
the options were community property. See Jensen v. Jensen, 665 S.W.2d 107, 109 (Tex. 1984);
Strong v. Garrett, 224 S.W.2d 471, 474 (Tex. 1949); Welder v. Lambert, 44 S.W. 281, 286-87 (Tex.
1898) (character of property is fixed when acquired). Further, he argued that Virginia did not
overcome the community property presumption by clear and convincing evidence. Tex. Fam. Code
Ann. § 3.003 (West 1998); Cockerham v. Cockerham, 527 S.W.2d 162, 173 (Tex. 1975).

 Following closing arguments, the district court stated that the community property
presumption had not been overcome and that all of the options granted during the marriage were
community property. The court then declared that it would use the Hug formula Bradford referred
to in his testimony not for characterization purposes but for valuation of the options. Attached to
the divorce decree is a spreadsheet that shows the mathematical process the court used to value and
allocate the options between the parties. According to the spreadsheet, the court initially set aside
some of the options for a child support trust. The trial court then proceeded to value and allocate the
remaining options. The spreadsheet reflects that the court applied the Hug formula to apportion the
value of the remaining options. The court then allocated the options such that after the child support
set-aside, Ronald received 29,989 options, or 26.83% of the options and Virginia received 81,781
options, or 73.17% of the options. The district court filed original and amended findings of fact and
conclusions of law.

 In four issues, Ronald challenges all of the findings related to the options except the
one in which the court determined that all of the options were community property. The challenged
findings addressing the options are the following:


2.b. [O]n the date of divorce the value of the parties' Dell stock option rights were
substantially less than the value on that date of the Dell stock represented by
those options.


2.c. [O]n the date of divorce the entire value of the parties' Dell stock option rights
is equal to a portion of the future value of all the Dell shares (less purchase
price) that the parties will be entitled to purchase on the various option dates.


2.d. The entire divorce date value of each Dell Stock option can be determined with
reasonable accuracy by calculating that part of the value of the Dell stock when
it is received that bears the same proportion to the total value of the stock when
it is received, as the length of time the parties held the option before the divorce
bears to the total length of time from the date the option was granted to the date
it is exercised.


2.e. Total Number of [Options] Granted by each Option [Grant] before 9/10/99
X(number of days from Option Grant to 9/10/99 / Number of Days from Option
Grant to [Vesting] Date).


2.f. This formula does not include in the divorce date value of the parties' stock
option all of the value that the Dell stock will have when it is received in the
future, and the part of the future stock value not included represents a
reasonably accurate calculation of the extent to which Virginia Hewelt's
continued employment with Dell after the divorce will increase the values of
the stock options after the divorce. 



 In his third issue, Ronald contends that there is no evidence or factually insufficient
evidence to support these findings. In his fourth issue, he contends that the court abused its
discretion in allocating the options and that the court's allocation of the options materially affected
the property division.


Discussion


 We will first address Ronald's third issue challenging the sufficiency of the evidence
supporting the district court's findings of fact. Once we determine whether sufficient evidence exists
to support the fact findings, we will then address Ronald's fourth issue and determine whether the
court abused its discretion in dividing the estate of the parties. See Lindsey v. Lindsey, 965 S.W.2d
589, 593 (Tex. App.--El Paso 1998, no pet.) (interplay of legal sufficiency and abuse of discretion
standards of review).

Review of District Court's Fact Findings

 Ronald contends that there is no evidence or factually insufficient evidence to support
the district court's findings that valued the options. The decision on the value of property is a factual
issue based on the evidence received at trial. Grossnickle v. Grossnickle, 865 S.W.2d 211, 212 (Tex.
App.--Texarkana 1993, no writ).

 On appeal from a judgment rendered in a bench trial, we review the court's findings
of fact in the same manner as jury findings. Beard v. Beard, No. 10-98-357-CV, 2001 Tex. App.
LEXIS 2545, * 27-28 (Tex. App.--Waco April 18, 2001, no pet. h.) (citing Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994)). In considering a no-evidence or legal sufficiency point, we consider
only the evidence that tends to support the finding and disregard all evidence and inferences to the
contrary. Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987). We will sustain a legal sufficiency
challenge when there is no evidence of a vital fact, when the rules of law or evidence bar us from
attributing weight to the only evidence offered, when the evidence supporting a fact is no more than
a scintilla, and when the evidence conclusively establishes the contrary fact. Cecil v. Smith, 804
S.W.2d 509, 510 n.12 (Tex. 1991). In contrast, we review a fact finding for factual sufficiency by
examining all of the evidence presented to determine if the evidence is so weak as to render the
finding manifestly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

 The method used by the court to value the options was not presented as valuation
evidence by either Ronald or Virginia. Instead, the valuation method used by the court was
presented as evidence by the financial expert, Bradford, as a characterization method and a
mechanism to establish which options were Virginia's separate property. 

 Bradford testified that the options were valuable commodities, but that it was
impossible to place a dollar value on the options scheduled to vest in the future. He stated that any
number derived from consulting the price of Dell stock on any given day to ascertain the value of
an option to purchase Dell stock on that day would be hypothetical since the option would not have
vested on that day. Bradford protested repeatedly to inquiries attempting to have him assess a
monetary value to the options. Despite his testimony, the court instructed Bradford to present a
hypothetical valuation of the options using the Hug characterization method based on the stock price
as of the date of trial, September 9, 1999. Other testimony about the value of the options came from
Virginia who testified that she viewed the options as having value, but she could not say that they
would have value in five years. She also stated that the value of the options depended on her
continued employment with Dell.

 In applying the Hug characterization method, the court on its own substituted the
word "value" for "characterization" in the formula. Neither Bradford nor Virginia purported to value
the options. We hold that the district court's findings regarding valuation of the options is
unsupported by the evidence. We sustain point of error three.


Review of Property Division

 In his fourth issue, Ronald contends that the district court's allocation of the options
based on the unsupported valuation findings resulted in the district court abusing its discretion in
dividing the parties' community property. 

 In a divorce proceeding, the trial court shall order a division of the estate of the parties
in a manner it deems just and right. Tex. Fam. Code Ann. § 7.001 (West 1998). When an appellant
complains that a trial court improperly divided the parties' property, the controlling issue is whether
the division was just and right. Hill v. Hill, 971 S.W.2d 153, 155 (Tex. App.--Amarillo 1998, no
pet.); Rafferty v. Finstad, 903 S.W.2d 374, 376 (Tex. App.--Houston [1st Dist.] 1995, writ denied). 
The trial court is afforded wide discretion in dividing the estate of the parties and its division will
not be altered on appeal unless the court abused its discretion, that is, its decision was arbitrary,
unreasonable, and without reference to guiding principles. Murff v. Murff, 615 S.W.2d 696, 698
(Tex. 1981). When reviewing a property division, the appellate court assumes the trial court
properly exercised its discretion in dividing the estate of the parties upon divorce. Vallone v.
Vallone, 644 S.W.2d 455, 460 (Tex. 1982); Murff, 615 S.W.2d at 698. The appellant bears the
burden of showing that the trial court's abuse of discretion caused a division of property so
disproportionate that the division was manifestly unjust and unfair. Hedtke v. Hedtke, 248 S.W. 21,
23 (Tex. 1923). The appellate court, therefore, will reverse a property division only if the error
materially affects the trial court's property division. Henry v. Henry, 48 S.W.3d 468, 475 (Tex.
App.--Houston [14th Dist.] 2001, no pet. h.) (citing Jacobs v. Jacobs, 687 S.W.2d 731, 732-33
(Tex. 1985)); see McElwee v. McElwee, 911 S.W.2d 182, 189 (Tex. App.--Houston [1st Dist.] 1995,
writ denied).

 According to the spreadsheet attached to the divorce decree, there were 111,769
options to be divided between the parties after the set-aside for the child support trust. We conclude
that the options were a significant part of the community estate and that the court's unsupported
valuation method resulted in an allocation of the options that materially affected the community
property division. We sustain Ronald's fourth point of error.

Conclusion


 Having determined that the evidence does not support the trial court's findings, it is
unnecessary for us to address Ronald's first and second issues. When reversible error occurs that
materially affects the trial court's division of property, an appellate court is not permitted to either
render a different division or to remand only certain portions of the marital property for a new
division; rather it must remand the entire community estate for a new division. See Jacobs, 687
S.W.2d at 732-33. Accordingly, we remand the property division in order for the trial court to
exercise its discretion in determining a new division of the property. We affirm the decree in all
other respects.



 

 Jan P. Patterson

Before Justices Yeakel, Patterson and Powers*

Affirmed in Part; Reversed and Remanded in Part

Filed: August 30, 2001

Do Not Publish







* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   According to Dell's terms and conditions, if Virginia is terminated without cause, any portion
of the options not yet vested would become void and any portion of the options that had vested and
had not yet been exercised would become void the earlier of (1) the end of the original term or (2)
the expiration of thirty days after the employment termination date. If Virginia is terminated with
cause, any portion of the options that had not been exercised--whether vested or not--would
become void at the time of employment termination.