TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00007-CV



 



Donald Harrell and Shirley Temesgen, Appellants


 

v.


 

Kris Hochderffer, as Trustee of the Clark Family Trust, Appellee


 




FROM PROBATE COURT NO. 1 OF TRAVIS COUNTY


NO. 85,570-C, HONORABLE GUY S. HERMAN, JUDGE PRESIDING 







D I S S E N T I N G O P I N I O N


 I respectfully dissent from the majority opinion. Because I would hold that
appellants established their entitlement to summary judgment as a matter of law based on the
appellee's failure to raise an issue of material fact rebutting the applicable community-property
presumptions, I would reverse the portions of the trial court's summary-judgment order partially
granting Hochderffer's summary-judgment motion and denying the appellants' summary-judgment
motion, and I would render summary judgment in favor of the appellants. 

 Within the appellants' argument regarding the character of the settlement funds
deposited into the Clark Family Trust ("the Trust"), the appellants rely on two presumptions: (1)
the presumption that property possessed during marriage is community property; and (2) the
presumption that a personal-injury settlement that could include both separate and community
property is community property. 

 Regarding the first presumption, there is no dispute that Rudie and Jessie Mae
received and possessed the settlement proceeds during their marriage. Thus, the first presumption
applies. See Tex. Fam. Code Ann. § 3.003(a) (West 2006). Regarding the second presumption,
the Settlement Agreement indicates that Rudie and Jessie Mae each received a separate amount
of money to dismiss the personal-injury suit but does not indicate the type of damages for which
the settlement proceeds were paid. The record shows that Rudie and Jessie Mae sought at least
some damages that would be considered their community property--for Rudie's past and future
medical expenses--and at least some that would be considered Rudie's separate property--for
Rudie's mental anguish, disfigurement, and pain and suffering. See id. § 3.001(3) (West 2006);
Licata v. Licata, 11 S.W.3d 269, 273 (Tex. App.--Houston [14th Dist.] 1999, pet. denied); 
Slaton v. Slaton, 987 S.W.2d 180, 183 (Tex. App.--Houston [14th Dist.] 1999, pet. denied). 
They also sought exemplary damages. Accordingly, the settlement could have included both
separate and community property, making the second presumption applicable. Cottone v.
Cottone, 122 S.W.3d 211, 213 (Tex. App.--Houston [1st Dist.] 2003, no pet.); Licata, 11
S.W.3d at 273; Slaton, 987 S.W.2d at 183.

 The appellants also contend that the settlement proceeds remained community
property at all times after Rudie and Jessie Mae received the money because Rudie and Jessie Mae
did not partition the proceeds. In Hochderffer's motion for summary judgment, he argued the
opposite, contending that the Schedule of Property constituted a partition agreement. A partition
agreement is used to convert community property to separate property. See Tex. Fam. Code
Ann. § 4.102 (West 2006). Such an agreement must be in writing and signed by both parties. 
See id. § 4.104 (West 2006). It must also contain a specific reference to a partition or other
language indicating that such a division was intended. See Byrnes v. Byrnes, 19 S.W.3d 556, 559
(Tex. App.--Fort Worth 2000, no pet.). 

 Here, the Schedule of Property meets the first requirement because it is in writing. 
It also meets the second requirement because the Trust Agreement, which incorporates the
Schedule of Property by reference, was signed by both parties. However, the Schedule of
Property does not meet the third requirement because it does not contain any language constituting
a valid partition. The Schedule of Property states only that Rudie's contribution to the Trust--the
settlement proceeds paid on behalf of him plus ten dollars--was his separate property and that
Jessie Mae's contribution to the Trust--the settlement proceeds paid on behalf of her plus ten
dollars--was her separate property. Merely stating that the property was separate property is not
enough; the agreement must specifically state that the parties meant to partition the property. See
Goetz v. Goetz, 130 S.W.3d 359, 361 (Tex. App.--Houston [14th Dist.] 2004, pet. denied)
(holding that agreement was not partition agreement where agreement used the word "division"
but not "partition"); Byrnes, 19 S.W.3d at 559 (concluding that agreement was not partition
agreement where agreement made no reference to partition of interest); Collins v. Collins, 752
S.W.2d 636, 637 (Tex. App.--Fort Worth 1988, writ ref'd) (holding that joint income tax return
identifying income from certain assets as separate property was not partition agreement where it
did not contain specific language indicating partition). Because the language in the Schedule of
Property does not include any reference to a partition, the document is not a valid partition
agreement.

 Given the absence of a partition agreement and the applicability of the community-property presumptions, I would conclude that the appellants proved their right to summary
judgment as a matter of law. As a result, the burden would shift to Hochderffer to present
evidence raising a genuine issue of material fact that would preclude summary judgment. See
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995); Kyle v. Countrywide Home
Loans, Inc., 232 S.W.3d 355, 358 (Tex. App.--Dallas 2007, pet. denied). 

 Property is characterized as separate or community at the time of inception of title. 
See Tex. Fam. Code Ann. § 3.404(a) (West Supp. 2009); Strong v. Garrett, 224 S.W.2d 471, 474
(Tex. 1949); Wilkerson v. Wilkerson, 992 S.W.2d 719, 722 (Tex. App.--Austin 1999, no pet.). The
inception of title doctrine fixes the character of certain property interests when a party first acquires
a right or claim to the property. See, e.g., Henry S. Miller Co. v. Evans, 452 S.W.2d 426, 430 (Tex.
1970); Pace v. Pace, 160 S.W.3d 706, 711 (Tex. App.--Dallas 2005, pet. denied); Wilkerson,
992 S.W.2d at 722. In order to prove certain assets are separate property, a party must trace and
clearly identify the property claimed to be separate. See McKinley v. McKinley, 496 S.W.2d 540,
543 (Tex. 1973); Zagorski v. Zagorski, 116 S.W.3d 309, 316 (Tex. App.--Houston [14th Dist.]
2003, pet. denied). Tracing involves establishing the separate origin of the property through
evidence showing the time and means by which the spouse originally obtained possession of the
property. Zagorski, 116 S.W.3d at 316; Ganesan v. Vallabhaneni, 96 S.W.3d 345, 354
(Tex. App.--Austin 2002, pet. denied). Hochderffer has provided no such tracing evidence. 

 The evidence presented by Hochderffer includes copies of two checks issued from
an IOLTA account and deposited into the Trust on behalf of Rudie and Jessie Mae and a copy of
the Schedule of Property, in which Rudie and Jessie Mae stated that their contributions to the
Trust were their separate property. Neither the checks nor the Schedule of Property have any
bearing on the key considerations in proving the separate nature of property: the time and means
by which the spouse originally obtained possession of the property. The most the Schedule of
Property shows is that Rudie and Jessie Mae believed that the amount of the check made out on
behalf of Rudie was Rudie's separate property. And the two checks deposited into the Trust show
only that each of the checks was deposited on behalf of one of the spouses, not that the checks
were meant to compensate for certain types of damages. Without settlement documents,
testimony, or some other item of evidence explaining the types of damages for which Rudie and
Jessie Mae were compensated in the personal-injury settlement, I would hold that Hochderffer has
not raised an issue of fact as to the separate nature of the property. See, e.g., Licata, 11 S.W.3d
at 274 (settlement agreements specifically pointed out nature of payments as separate property by
describing types of damages compensated by settlement). 

 The majority partially relies on Hochderffer's affidavit testimony in which he stated
that he repaid all sums owed to Medicaid and paid all of Rudie's medical expenses for the
remainder of Rudie's lifetime from "Rudie Clark's Trust," (1) leaving no outstanding medical bills
at Rudie's death. The majority contends that Rudie's medical expenses were the only community
obligation related to the personal-injury damages and that because the medical expenses were paid
in full using the trust funds, the trust funds that were deposited with the check made out "on
behalf of Rudie Clark" were appropriately characterized as Rudie's separate property. However,
the majority's reliance on the payment of Rudie's medical expenses disregards the decisive point
on this issue, which is that the character of the property was fixed at the time that Rudie and Jessie
Mae took title to it. Evidence showing payments after Rudie and Jessie Mae took title to the funds
does not have any bearing on the character of the funds at the inception of title. See Tex. Fam. Code
Ann. § 3.404(a); Strong, 224 S.W.2d at 474; Wilkerson, 992 S.W.2d at 722. The only way for
Hochderffer to establish the separate nature of the property was to trace and identify the property
claimed to be separate and show the time and means by which Rudie originally obtained possession
of the property. McKinley, 496 S.W.2d at 543; Zagorski, 116 S.W.3d at 316; Ganesan, 96 S.W.3d
at 354. As I previously explained, Hochderffer would have needed to provide settlement documents
or some other evidence showing the types of damages for which Rudie and Jessie Mae were
compensated in the settlement agreement, which he has not done. 

 Considering that courts must use the inception of title doctrine in characterizing
property, that Hochderffer has not provided any tracing evidence showing that the settlement
proceeds received by Rudie were Rudie's separate property, and that the record does not contain
any evidence of a partition agreement, I would hold that Hochderffer has not raised a genuine
issue of material fact regarding the characterization of the proceeds and that the trial court
therefore erred in denying the appellants' motion for summary judgment. I would reverse the
portions of the trial court's summary-judgment order partially granting Hochderffer's motion for
summary judgment and denying the appellants' summary-judgment motion, and I would render
summary judgment in favor of the appellants. 


 ___________________________________________

 David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Filed: June 10, 2011
1. I presume that Hochderffer's reference to "Rudie Clark's Trust" is a reference to the share of
the Clark Family Trust made up of the amount of the check initially deposited into the Clark Family
Trust on behalf of Rudie.